**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

KENNETH HICKMAN,  §
 §
       *Plaintiff,*  §
 §
*versus*  §     CIVIL ACTION NO. H-08-1194
 §
MICHAEL J. ASTRUE, Commissioner  §
of the Social Security Administration,  §
 §
       *Defendant.*  §

**MEMORANDUM AND ORDER**

Pending before the Court are Plaintiff Kenneth Hickman's ("Hickman") and Defendant

Michael J. Astrue's, Commissioner of the Social Security Administration (the "Commissioner"),

cross-motions for summary judgment. Hickman appeals the determination of an Administrative Law

Judge ("the ALJ") that he is not entitled to receive Title II disability insurance benefits. *See* 42 U.S.C.

§§ 416(I), 423. Having reviewed the pending motions, the submissions of the parties, the pleadings,

the administrative record, and the applicable law, it is ordered that Hickman's Motion for Summary

Judgment (Docket Entry No. 11) is denied, the Commissioner's Motion for Summary Judgment

(Docket Entry No. 13) is granted, the Commissioner's decision denying benefits is affirmed.

**I.**    ***Background***

On February 28, 2005, Hickman filed an application for disability insurance benefits with the

Social Security Administration ("SSA"), alleging disability beginning on May 7, 1999,[1] as a result

of back and neck pain, multiple sclerosis, asbestosis-related lung disease, heart problems, and

depression. (R. 11, 60-62, 81). After being denied benefits initially and on reconsideration, on June

---

[1] Initially, Hickman alleged an inability to work since June 15, 1996; however, during the second administrative hearing, Hickman's counsel amended the alleged onset date to May 7, 1999. (R. 11, 628).

22, 2005, Hickman requested a hearing before an ALJ to review the decision.  (R. 37, 38, 44-45, 46-49, 53-57).

A hearing was held on March 27, 2007, in Houston, Texas, at which time the ALJ heard testimony from Hickman and John Anigbogu, M.D. ("Dr. Anigbogu"), a medical expert ("ME"), who is board certified in Physical Medicine and Rehabilitation.  (R. 585-623).  Hickman's counsel objected to Dr. Anigbogu's testimony as "vague" with respect to documentation of bowel and bladder problems and because an orthopedic surgeon would provide a better assessment.  (R.13).  Thus, an amended hearing was held on May 22, 2007, in Houston, Texas, at which time the ALJ heard testimony from Hickman, Henry Hamilton, M.D. ("Dr. Hamilton"), a ME specializing in orthopedic surgery, and Thomas King, a vocational expert ("VE").  (R. 624-638).  In a decision dated June 22, 2007, the ALJ denied Hickman's application for benefits.  (R. 11-18).  On August 22, 2007, Hickman filed a request for review of the ALJ's decision by the Appeals Council of the SSA's Office of Hearings and Appeals.  (R. 580-581).  On February 28, 2008,  after reviewing additional evidence, the Appeals Council denied Hickman's request to review the ALJ's determination.  (R. 4-7).  This rendered the ALJ's opinion the final decision of the Commissioner.  *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).  Hickman filed this case on April 15, 2008, seeking judicial review of the Commissioner's denial of his claim for benefits.  *See* Docket Entry No. 1.

**II.**   ***Analysis***

   **A.**   ***Statutory Bases for Benefits***

Social Security disability insurance benefits are authorized by Title II of the Act and are funded by Social Security taxes.  *See* SOCIAL SECURITY ADMINISTRATION, SOCIAL SECURITY HANDBOOK, § 2100 (14th ed. 2001).  The disability insurance program provides income to individuals

who are forced into involuntary, premature retirement, provided they are both *insured* and *disabled*, regardless of indigence.  A claimant for disability insurance can collect benefits for up to twelve months of disability prior to the filing of an application.  *See* 20 C.F.R. §§ 404.131, 404.315; *Ortego v. Weinberger*, 516 F.2d 1005, 1007 n.1 (5th Cir. 1975); *see also Perkins v. Chater*, 107 F.3d 1290, 1295 (7th Cir. 1997).  For purposes of Title II disability benefits, Hickman remained insured through December 31, 2001.  (R. 11, 17).  Consequently, to be eligible for disability benefits, Hickman must prove that he was disabled prior to that date.

Applicants seeking benefits under this statutory provision must prove "disability" within the meaning of the Act.  See 42 U.S.C. § 423(d); 20 C.F.R. § 404.1505(a).  Under Title II, disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

**B.**   ***Standard of Review***

**1.**   ***Summary Judgment***

The court may grant summary judgment under Fed. R. Civ. P. 56(c) when the moving party is entitled to judgment as a matter of law because there is no genuine issue as to any material fact. The burden of proof, however, rests with the movant to show that there is no evidence to support the nonmoving party's case.  If a reasonable jury could return a verdict for the nonmoving party, then a motion for summary judgment cannot be granted because there exists a genuine issue of fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

An issue of fact is "material" only if its resolution could affect the outcome of the case. *See Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 189 (5th Cir. 1991). When deciding whether to grant a motion for summary judgment, the court shall draw all justifiable inferences in favor of the nonmoving party and deny the motion if there is some evidence to support the nonmoving party's position. *See McAllister v. Resolution Trust Corp.*, 201 F.3d 570, 574 (5th Cir. 2000). If there are no issues of material fact, the court shall review any questions of law *de novo*. *See Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). Once the movant properly supports the motion, the burden shifts to the nonmoving party, who must present specific and supported material facts, of significant probative value, to preclude summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *International Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Compania Mexicana de Aviacion, S.A. de C.V.*, 199 F.3d 796, 798 (5th Cir. 2000).

### 2.    *Administrative Determination*

Judicial review of the Commissioner's denial of disability benefits is limited to whether the final decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied to evaluate the evidence. *See Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). "Substantial evidence" means that the evidence must be enough to allow a reasonable mind to support the Commissioner's decision; it must be more than a mere scintilla and less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Masterson*, 309 F.3d at 272; *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

When applying the substantial evidence standard on review, the court "scrutinize[s] the record to determine whether such evidence is present." *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001)

4

(citations omitted).  If the Commissioner's findings are supported by substantial evidence, they are

conclusive and must be affirmed.  *See Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).

Alternatively, a finding of no substantial evidence is appropriate if no credible evidentiary choices

or medical findings support the decision.  *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).  The

court may not, however, reweigh the evidence, try the issues *de novo*, or substitute its judgment for

that of the Commissioner.  *See Masterson*, 309 F.3d at 272.  In short, "[c]onflicts in the evidence are

for the Commissioner and not the courts to resolve.  *Id.*

C.    ***ALJ's Determination***

An ALJ must engage in a five-step sequential inquiry to determine whether the claimant is

capable of performing "substantial gainful activity," or is, in fact, disabled:

1.    An individual who is working and engaging in substantial gainful activity will
      not be found disabled regardless of the medical findings.  *See* 20 C.F.R.
      § 404.1520(b).

2.    An individual who does not have a "severe impairment" will not be found to
      be disabled.  *See* 20 C.F.R. § 404.1520(c).

3.    An individual who "meets or equals a listed impairment in Appendix 1" of the
      regulations will be considered disabled without consideration of vocational
      factors.  *See* 20 C.F.R. § 404.1520(d).

4.    If an individual is capable of performing the work he has done in the past, a
      finding of "not disabled" must be made.  *See* 20 C.F.R. § 404.1520(e).

5.    If an individual's impairment precludes performance of his past work, then
      other factors, including age, education, past work experience, and residual
      functional capacity must be considered to determine if any work can be
      performed.  *See* 20 C.F.R. § 404.1520(f).

*Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000); *accord Boyd*, 239 F.3d at 704-05.  The claimant

has the burden to prove disability under the first four steps.  *See Myers*, 238 F.3d at 619.  If the

claimant successfully carries this burden, the burden shifts to the Commissioner at step five to show that other substantial gainful employment is available in the national economy, which the claimant is capable of performing. *See Masterson*, 309 F.3d at 272; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120 (1995). If the Commissioner is able to verify that other work exists in significant numbers in the national economy that the claimant can perform in spite of his existing impairments, the burden shifts back to the claimant to prove that he cannot, in fact, perform the alternate work suggested. *See Boyd*, 239 F.3d at 705. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. *See id*.

The mere presence of an impairment does not necessarily establish a disability. *See Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992). An individual claiming disability benefits under the Act has the burden to prove that he suffers from a disability as defined by the Act. *See Newton*, 209 F.3d at 452; *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990); *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). A claimant is deemed disabled under the Act only if he demonstrates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Shave v. Apfel*, 238 F.3d 592, 594 (5th Cir. 2001); *accord Newton*, 209 F.3d at 452; *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999); *Selders*, 914 F.2d at 618; *see also* 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" is defined as work activity involving significant physical or mental abilities for pay or profit. *See Newton*, 209 F.3d at 452-53; *see also* 20 C.F.R. § 404.1572(a)-(b).

6

A medically determinable "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983); *see also* 42 U.S.C. § 423(d)(3).  "[A]n individual is 'under a disability, only if the impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'"  *Greenspan*, 38 F.3d at 236 (quoting 42 U.S.C. § 423(d)(2)(A)).  This is true regardless of whether such work exists in the immediate area in which the claimant resides, whether a specific job vacancy exists, or whether the claimant would be hired if he applied.  *See Oldham v. Schweiker*, 660 F.2d 1078, 1083 (5th Cir. 1981); *see also* 42 U.S.C. § 423(d)(2)(A).

In the case at bar, when addressing the first four steps, the ALJ determined:

1. The claimant met the special earnings requirements of the Social Security Act on May 7, 1999, the amended alleged onset date, and continued to meet them through December 31, 2001.

2. The claimant has not engaged in substantial gainful work since the alleged onset date of disability.

3. On and prior to December 31, 2001, the claimant had degenerative disc disease, but this impairment did not full meet or equal in severity the requirements of any of the medical listings in Appendix 1, Subpart P, Regulations No. 4.

4. The claimant's testimony was not fully credible or consistent with the evidence of record considered as a whole.

5. On and prior to December 31, 2001, the claimant had the residual functional capacity to lift and carry 10 pounds frequently and 20 pounds occasionally, stand and walk 6 hours of an 8 hour work day, and sit 6 hours of a workday.

7

6.      On and prior to December 31, 2001, the claimant did not have the residual functional capacity to perform his past relevant work.

(R. 17-18).  As to the fifth step, the ALJ concluded:

7.      As of December 2001 the claimant was 52 years of age, defined as an individual closely approaching advanced age.

8.      The claimant has a high school education.

9.      The claimant has skills from his past relevant work which can be transferred to jobs within his residual functional capacity during the relevant period under consideration, such as knowledge and usage of power and hand tools and the ability to follow oral and written instructions and read work diagrams.

10.     On and prior to December 31, 2001, the claimant's medical-vocational profile corresponded with Rule 202.15, Appendix 2, Subpart P, Regulations No. 4, which directs a conclusion of not disabled.  Examples of semi-skilled light jobs that the claimant could have performed on and prior to December 31, 2001, include drill press operator, bench assembler, and metal sander.

11.     The claimant was not under a "disability," as defined in the Social Security Act, as of and prior to December 31, 2001.

(R. 18).

This court's inquiry is limited to a determination of whether there is substantial evidence in the record to support the ALJ's findings and whether the proper legal standards have been applied. *See Masterson*, 309 F.3d at 272; *Watson*, 288 F.3d at 215; *Myers*, 238 F.3d at 619; *Newton*, 209 F.3d at 452; *Greenspan*, 38 F.3d at 236; *see also* 42 U.S.C. §§ 405(g), 1383(c)(3).  To determine whether the decision to deny Hickman's claim for disability benefits is supported by substantial evidence, the court weighs the following four factors:  (1) the objective medical facts; (2) the diagnoses and opinions from treating and examining physicians; (3) the plaintiff's subjective evidence of pain and disability, and any corroboration by family and neighbors; and (4) the plaintiff's age, educational

background, and work history.  *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Wren v.*

*Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir.

1972)).  Any conflicts in the evidence are to be resolved by the ALJ and not the court.  *See Newton*,

209 F.3d at 452; *Brown*, 192 F.3d at 496; *Martinez*, 64 F.3d at 174; *Selders*, 914 F.2d at 617.

      **D.**    ***Issues Presented***

      Hickman claims the ALJ erred in his analysis by determining: (1) Hickman does not meet or

equal listing § 1.04, relating to disorders of the spine; (2) Hickman's only severe impairment is

degenerative disc disease; and, (3) by formulating Hickman's RFC without considering medication

side effects. (R. 11).  The Commissioner disagrees with Hickman's contentions, maintaining that the

ALJ's decision is supported by substantial evidence.  (R. 13).

      **E**.    ***Review of the ALJ's Decision***

          **1.**    ***Objective Medical Evidence and Opinions of Physicians***

      When assessing a claim for disability benefits, "[i]n the third step, the medical evidence of

the claimant's impairment is compared to a list of impairments presumed severe enough to preclude

any gainful work."  *Sullivan v. Zebley*, 493 U.S. 521, 525 (1990).  If the claimant is not actually

working and his impairments match or are equivalent to one of the listed impairments, he is presumed

to be disabled and qualifies for benefits without further inquiry.  *See id.* at 532; *see also* 20 C.F.R.

§ 404.1520(d).  When a claimant has multiple impairments, the Act requires the Commissioner to

"consider the combined effect of all of the individual's impairments without regard to whether any

such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(B); *see*

*Zebley*, 493 U.S. at 536 n.16; *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).  The relevant

regulations similarly provide:

> In determining whether your physical or mental impairment or impairments are of a
> sufficient medical severity that such impairment or impairments could be the basis of
> eligibility under the law, we will consider the combined effect of all of your
> impairments without regard to whether any such impairment, if considered separately,
> would be of sufficient severity.  If we do find a medically severe combination of
> impairments, the combined impact of the impairments will be considered throughout
> the disability determination process.  If we do not find that you have a medically
> severe combination of impairments, we will determine that you are not disabled.

20 C.F.R. § 404.1523; *see also Loza*, 219 F.3d at 393.  The medical findings of the combined

impairments are compared to the listed impairment most similar to the claimant's most severe

impairment.  *See Zebley*, 493 U.S. at 531.

  The claimant has the burden to prove at step three that his impairment or combination of

impairments matches or is equivalent to a listed impairment.  *See id.* at 530-31; *Selders*, 914 F.2d at

619.  The listings describe a variety of physical and mental illnesses and abnormalities, most of which

are categorized by the body system they affect.  *See Zebley*, 493 U.S. at 529-30.  Individual

impairments are defined in terms of several specific medical signs, symptoms, or laboratory test

results.  *See id.* at 530.  For a claimant to demonstrate that his disorder matches an Appendix 1

listing, it must meet *all* of the specified medical criteria.  *See id.*  An impairment that manifests only

some of the specified criteria, no matter how severe, does not qualify.  *See id.*

  For a claimant to qualify for benefits by showing that his unlisted impairment, or combination

of impairments, is equivalent to a listed impairment, he must present medical findings equal in

severity to *all* the criteria for the one most similar listed impairment.  *See id.* at 531 (citing 20 C.F.R.

§ 416.926(a)).  A claimant's disability is equivalent to a listed impairment if the medical findings are

at least equal in severity and duration to the listed findings.  *See* 20 C.F.R. § 404.1526(a).  The

applicable regulation further provides:

(1)(I)   If you have an impairment that is described in the Listing of Impairments in Appendix 1 of Subpart P of this chapter, but—

(A)   You do not exhibit one or more of the medical findings specified in the particular listing, or

(B)   You exhibit all of the medical findings, but one or more of the findings is not as severe as specified in the listing;

(ii)   We will nevertheless find that your impairment is medically equivalent to that listing if you have other medical findings related to your impairment that are at least of equal medical significance.

20 C.F.R. § 404.1526(a).   Nonetheless, "[a] claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Zebley*, 493 U.S. at 531. Ultimately, the question of equivalence is an issue reserved for the Commissioner. *See Spellman v. Shalala*, 1 F.3d 357, 364 (5th Cir. 1993); 20 C.F.R. § 404.1527(e).

A review of the medical records submitted in connection with Hickman's administrative hearing reveals that Hickman has a history of back pain, dating back to 1979 when he reportedly ruptured his disc at work. (R. 513). He was treated conservatively. (R. 513). In June 1995, Hickman was in a car accident, injuring his back and neck. On August 10, 1995, magnetic resonance imaging ("MRI") scans of Hickman's cervical, thoracic, and lumbar spine showed degenerative changes with the most significant changes at the L5-S1 level where there was moderate to marked bilateral foraminal stenosis with minimal impingement upon the traversing S1 nerve roots bilaterally. (R. 259-261). Additionally in August 1995, an electromyography showed evidence of bilateral cervical nerve root irritation. (R. 284). A computed tomography ("CT") scan conducted revealed disc herniation

11

with minimal impingement on the thecal sac and encroachment of the left nerve root of S1 consistent with disc herniation.  (R. 282).  Hickman was prescribed pain medication and physical therapy.

In September 1995, Hickman visited Edward Murphy, M.D., ("Dr. Murphy"), complaining of neck and lower back pain.  (R. 281-282).  Dr. Murphy diagnosed Hickman with cervical spondylosis.[2]  (R. 280).  Dr. Murphy prescribed a pain medication as well as physical therapy, anticipating he would return to work in one month.  (R. 280).  At that time, Hickman did not want to have any surgery.  (R. 281).

Because Hickman continued to suffer from cervical spondylosis and cervical radiculopathy on his left side, on December 7, 1995, Dr. Murphy performed a cervical hemilaminectomy[3] on Hickman.  (R. 267-271).  Dr. Murphy considered the surgery "successful."  (R. 268).  He further noted during follow-up appointments that Hickman had normal mobility in his neck, and that his upper extremities showed good strength and coordination.  (R. 262, 265, 266).  Dr. Murphy reported that Hickman was walking three to five miles a day.  (R. 265-266).

In January 1996, Dr. Murphy determined that Hickman could return to light work.  (R. 265).  Dr. Murphy reported that in February 1996, Hickman had some discomfort but not as bad as before.  (R. 262).  He also noted that Hickman had some discomfort in his lower back.  (R. 262).  Dr. Murphy, however, noted that Hickman was going to start an exercise training program.  (R. 262).  From February 1996, through December 2001, there are no medical reports documenting any significant neurological deficits or abnormalities on physical examination.  (R. 13, 95-137).

---

[2]  "Spondylosis" pertains to degenerative spinal changes due to arthritis.  *See* DORLAND'S, *supra*, at 1684.

[3]  "Hemilaminectomy" pertains to a surgical removal of one side of the vertebral lamina.  *See* DORLAND'S, *supra*, at 800.

"[O]rdinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Greenspan*, 38 F.3d at 237; *accord Myers*, 238 F.3d at 621; *Loza*, 219 F.3d at 395; *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985). The opinion of a specialist generally is accorded greater weight *than* that of a non-specialist. *See Newton*, 209 F.3d at 455; *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994), *overruled on other grounds by Sims v. Apfel*, 530 U.S. 103, 108 (2000). Medical opinions are given deference, however, only if those opinions are shown to be more than conclusory and supported by clinical and laboratory findings. *See Scott*, 770 F.2d at 485. Moreover, a treating physician's opinions are far from conclusive and may be assigned little or no weight when good cause is shown. *See Myers*, 238 F.3d at 621; *Loza*, 219 F.3d at 395; *Greenspan*, 38 F.3d at 237.

Good cause may permit an ALJ to discount the weight of a treating physician's opinion in favor of other experts when the treating physician's evidence is conclusory, unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. *See Myers*, 238 F.3d at 621; *Newton*, 209 F.3d at 456; *see also Brown*, 192 F.3d at 500; *Greenspan*, 38 F.3d at 237; *Paul*, 29 F.3d at 211. It is well settled that even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ has sole responsibility for determining a claimant's disability status. *See Paul*, 29 F.3d at 211; *accord Myers*, 238 F.3d at 621; *Newton*, 209 F.3d at 455.

### a.   *Listing 1.04—Disorders of the Spine*

In the case at bar, Hickman argues that the ALJ erred by not finding him disabled *per se* under Listing 1.04. Listing 1.04, which pertains to disorders of the spine, requires the following criteria:

13

Disorders of the spine (herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  **With**:

A.      Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); **or**

B.      Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every two (2) hours; **or**

C.      Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic non-radicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

*See* 20 C.F.R. § 404.1525 (emphasis added).

Based on the medical evidence on record, the ALJ was proper in concluding that Hickman did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments.  (R. 24).  With respect to 1.04, the ALJ correctly determined that Hickman's condition did not meet the requirements of Listing 1.04 because there is no evidence, prior to December 2001, of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis.  (R. 17).  Additionally, in January 1996, six months after Hickman's car accident and one month after his cervical hemilaminectomy, Dr. Murphy reported Hickman's range of motion was normal, and his strength, tone, and coordination were good.  (R. 262, 265, 266).  In fact, on January 18, 1996, Dr. Murphy released Hickman to return to light work–three years prior to his alleged onset date of May 1999.  (R. 265).  These facts undercut Hickman's contention that he should have been found *per se* disabled

14

under Listing 1.04. Additionally, the medical expert, Dr. Hamilton, testified at the hearing that after a review of Hickman's medical records, it was his opinion that Hickman did not meet or equal a listed impairment prior to December 31, 2001. (R. 630). Because the medical records do not support Hickman's claim that he was disabled prior to December 31, 2001, substantial evidence supports the ALJ's finding that Hickman did not meet a listing.

### b.   *Other Alleged Impairments*

Hickman next argues that the ALJ erred by failing to find his chest problem or asbestosis as a severe impairment. Contrary to Hickman's contentions, the ALJ's decision thoroughly analyzed this issue and correctly determined his chest or lung-related issues during the relevant time period were not severe impairments. (R. 14-15). In November 1995, during a follow-up appointment, Dr. Murphy noted that Hickman had some wheezing in his lungs. (R. 273). Dr. Murphy noted that Hickman had advised him that he had been diagnosed with asbestosis. (R. 273). In December 1995, a chest x-ray revealed "pleural plaque, possible asbestosis." (R. 268). Hickman was instructed to stop smoking and use an inhaler. (R. 268). Two years later, in October 1997, George Brooks, M.D. ("Dr. Brooks") examined Hickman's lungs and reiterated that Hickman needed to stop smoking. (R 164). In subsequent visits with Dr. Brooks, in December 1997, and August 2002, Hickman's lungs were reported to be clear. (R. 158, 163).

Prior to December 31, 2001, the record is devoid of reports of functional limitations (*e.g.*, fatigue, shortness of breath) due to Hickman's chest problem or asbestos-related lung disease. Instead, the record reflects that immediately following his December 1995 surgery, Hickman reported to John Trowbridge, M.D. ("Dr. Trowbridge") that he was working out, running, swimming, and boating. (R. 98, 102, 108, 112, 117, 120, 122, 124, 128, 133). Taking into consideration Hickman's

active lifestyle, his failure to report functional limitations, and the medical record evidence between May 17, 1999 (*i.e.*, Hickman's alleged onset date of disability), and December 31, 2001 (*i.e.*, the expiration of Hickman's insured status), substantial evidence supports the ALJ's decision not finding Hickman's chest problem or asbestosis as a severe impairment.

### 2.   *Subjective Complaints*

The law requires the ALJ to make affirmative findings regarding claimant's subjective complaints. *See Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994) (citing *Sharlow v. Schweiker*, 655 F.2d 645, 648-49 (5th Cir. 1981)).  When a claimant alleges disability resulting from pain, he must establish a medically determinable impairment that is capable of producing disabling pain. *See Ripley v. Charter*, 67 F.3d 552, 556 (5th Cir. 1995) (citing 20 C.F.R. § 404.1529).

Once a medical impairment is established, the subjective complaints of pain must be considered along with the medical evidence in determining the individual's work capacity.  *See id.* It is well settled that an ALJ's credibility findings on a claimant's subjective complaints are entitled to deference.  *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Scott v. Shalala*, 30 F.3d 33, 35 n.2 (5th Cir. 1994); *Falco*, 27 F.3d at 164; *Wren*, 925 F.2d at 128.  The Fifth Circuit recognizes that "the ALJ is best positioned" to make these determinations because of the opportunity to observe the claimant first-hand.  *See Falco*, 27 F.3d at 164 & n.18.  Moreover, "[t]he Act, regulations and case law mandate that the Secretary require that subjective complaints be corroborated, at least in part, by objective medical findings."  *Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988) (citing 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529; *Owens v. Heckler*, 770 F.2d 1276, 1281-82 (5th Cir. 1985)); *accord Chambliss*, 269 F.3d at 522 (citing *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989)); *Hampton v. Bowen*, 785 F.2d 1308, 1309 (5th Cir. 1986).

16

As a matter of law, the mere fact that working may cause a claimant pain or discomfort does not mandate a finding of disability. *See Hames*, 707 F.2d at 166; *Epps v. Harris*, 624 F.2d 1267, 1274 (5th Cir. 1980); *accord Brown v. Bowen*, 794 F.2d 703, 707 (D.C. Cir. 1986). Additionally, the mere existence of pain does not automatically bring a finding of disability. *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989); *Owens*, 770 F.2d at 1281. It must be determined whether substantial evidence indicates an applicant can work despite being in pain or discomfort. *See Chambliss*, 269 F.3d at 522; *Johnson v. Heckler*, 767 F.2d 180, 182 (5th Cir. 1985).

For pain to rise to the level of disabling, that pain must be "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Chambliss*, 269 F.3d at 522; *Falco*, 27 F.3d at 163; *Wren*, 925 F.2d at 128. The decision arising from the ALJ's discretion to determine whether pain is disabling is entitled to considerable deference. *See Chambliss*, 269 F.3d at 522; *Wren*, 925 F.2d at 128; *James*, 793 F.2d at 706. However, an ALJ may discount subjective complaints of pain as inconsistent with other evidence in the record. *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003) (citing *Wren*, 925 F.2d at 128 (citation omitted)).

At the administrative hearing, Hickman testified regarding his complaints of pain, stating his left arm, left leg, and bladder all go numb if he walks. (R. 593-595). The ALJ's decision indicates that the ALJ did consider objective and subjective factors related to the severity of Hickman's subjective complaints. (R. 14-167). In reaching his determination in this regard, the ALJ concluded:

> The medical records document the claimant's complaint of pain in the back and neck, and the radiographic studies showed abnormalities as set out in the summary above. However, there is no documentation of any significant neurological deficits or other abnormalities on physical examinations. A treating note dated April 2000 reflects that the claimant had "intermittent" pain in the lower back.

17

* * *

> The claimant's allegations concerning his subjective symptoms are found to be credible to the extent that he is unable to perform medium work, but not credible to the extent that they preclude him from performing light work.

* * *

> The undersigned Judge finds that the claimant's subjective symptoms were of only a mild to moderate degree and tolerable for the level of work, residual functional capacity and work limitations as found herein for the period of time on and prior to December 31, 2001, and the claimant's subjective complaints are found not to be fully credible but somewhat exaggerated with respect to that period of time.

(R. 14, 16). The ALJ's finding is supported by the medical records. The objective medical evidence, as summarized above, indicates that Hickman, despite his limitations, was capable of light work. Moreover, Hickman's activities (*e.g.*, working out, running, swimming, and boating) support the ALJ's finding. (R. 98, 102, 108, 112, 117, 120, 122, 124, 128, 133). These activities are relevant in determining credibility. *See Griego v. Sullivan*, 940 F.2d, 945 (5th Cir. 1991).

The Court does not doubt that Hickman suffers from pain; however, the records do not support a finding that Hickman's pain is constant, unremitting, and wholly unresponsive to therapeutic treatment. *See Chambliss*, 269 F.3d at 522; *Falco*, 27 F.3d at 163; *Wren*, 925 F.2d at 128. Accordingly, there is substantial evidence that supports the ALJ's finding that Hickman's subjective reports of pain do not rise to the level of disability.

### 3. *Residual Functional Capacity*

Under the Act, a person is considered disabled:

> only if his physical or mental impairment or impairments are of such severity that his is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the

immediate area in which he lives, or whether a specific job vacancy exists for his, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).  The Commissioner bears the burden of proving that a claimant's functional capacity, age, education, and work experience allow him to perform work in the national economy.  *See Brown v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *see also Masterson*, 309 F.3d at 272; *Watson*, 288 F.3d at 216; *Myers*, 238 F.3d at 619; *Greenspan*, 38 F.3d at 236.  If the Commissioner fulfills this burden by pointing out potential alternative employment, the claimant, in order to prevail, must prove that he cannot perform the alternate work suggested.  *See Masterson*, 309 F.3d at 272; *Boyd*, 239 F.3d at 705; *Shave*, 238 F.3d at 594; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

To determine whether a claimant can return to a former job, the claimant's "residual functional capacity" must be assessed.  *See Moore v. Sullivan*, 895 F.2d 1065, 1068 (5th Cir. 1990); *see also* 20 C.F.R. § 404.1545.  This term of art merely represents an individual's ability to perform activities despite the limitations imposed by an impairment.  *See Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990); *see also* 20 C.F.R. § 404.1545.  Residual functional capacity combines a medical assessment with the descriptions by physicians, the claimant or others of any limitations on the claimant's ability to work.  *See Elzy v. Railroad Retirement Bd.*, 782 F.2d 1223, 1225 (5th Cir. 1986); *see also* 20 C.F.R. § 404.1545.  When a claimant's residual functional capacity is not sufficient to permit him to continue his former work, then his age, education, and work experience must be considered in evaluating whether he is capable of performing any other work.  *See Boyd*, 239 F.3d at 705; 20 C.F.R. § 404.1520.  The testimony of a vocational expert is valuable in this regard, as "[he] is familiar with the specific requirements of a particular

19

occupation, including working conditions and the attributes and skills needed." *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986); *accord Carey*, 230 F.3d at 145; *see also Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995).

In evaluating a claimant's residual functional capacity, the Fifth Circuit has looked to SSA rulings ("SSR"). *See Myers*, 238 F.3d at 620. The Social Security Administration's rulings are not binding on this court, but they may be consulted when the statute at issue provides little guidance. *See id*. In *Myers*, the Fifth Circuit relied on SSRs addressing residual functional capacity and exertional capacity. *See id*. In that case, the court explained:

> First, SSR 96-8p provides that a residual functional capacity (RFC) is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule. The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities. However, without the initial function-by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past relevant work. . . . RFC involves both exertional and non-exertional factors. Exertional capacity involves seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. Each function must be considered separately. In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis. . . . The RFC assessment must include a resolution of any inconsistencies in the evidence.

*Id.* (internal citations omitted); *see* 61 Fed. Reg. 34474-01 (July 2, 1996). The court further commented:

> Second, SSR 96-9p also provides that initially, the RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to perform work-related activities. . . . The impact of an RFC for less than a full range of sedentary work is especially critical for individuals who have not yet attained age 50. Since age, education, and work experience are not usually significant factors in limiting the ability of individuals under age 50 to make an adjustment to other work, the conclusion whether such individuals who are limited

20

> to less than the full range of sedentary work are disabled will depend primarily on
> the nature and extent of their functional limitations or restrictions.

*Id.* (internal citations omitted); *see* 61 Fed. Reg. 34478 (July 2, 1996).  The court also noted that

SSR 96-9p defines "exertional capacity" as the aforementioned seven strength demands and

requires that the individual's capacity to do them on a regular continuing basis be stated.  *See id*.

To determine that an claimant can do a given type of work, the ALJ must find that the claimant can

meet the job's exertional requirements on a sustained basis.  *See Carter v. Heckler*, 712 F.2d 137,

142 (5th Cir. 1983) (citing *Dubose v. Matthews*, 545 F.2d 975, 977-78 (5th Cir. 1977)).

In the case at bar, the ALJ found that, on and prior to December 31, 2001, Hickman

retained the residual functional capacity to perform semi-skilled, light work as a drill press

operator, bench assembler, and/or a metal sander.  (R. 16-17, 634).  The ALJ concluded that,

during that time period, Hickman had the capacity to lift and carry 20 pounds occasionally and 10

pounds frequently, sit for 6 to 8 hours in a work day, stand or walk for 6 to 8 hours in a work day.

(R. 16).  The RFC determined by the ALJ is supported by the testimony of both the medical and

vocational experts.  (R. 630-631, 633-635).  Indeed, the medical expert, Dr. Hamilton, testified

that, although Hickman's condition appeared to worsen during the year 2004, prior to December

31, 2001, Hickman was capable of performing medium, light, or sedentary work.  (R. 631).

Hickman argues that the ALJ erred by failing to consider side effects from his prescription

medications when determining his RFC.  During the relevant time period of May 7, 1999, to

December 31, 2001, there are no reports that Hickman complained of disabling side effects from

medication. *See Hajek v. Shalala*, 30 F.3d 89, 92 (8th Cir. 1994).  Hickman's testimony, without

more, is insufficient to establish that medication side effects constituted a significant work-related

limitation.  *See Wren*, 925 F.2d at 125; *Houston*, 895 F.2d at 1016 (subjective complaints must be corroborated at least in part by objective medical evidence).  Consequently, substantial evidence supports the ALJ's decision in this regard.

**III.**    *Conclusion*

Accordingly, it is therefore

**ORDERED** that Hickman's Motion for Summary Judgment (Docket Entry No. 11) is **DENIED**.  It is further

**ORDERED** that the Commissioner's Motion for Summary Judgment (Docket Entry No. 13) is **GRANTED**.  It is further

**ORDERED** that the Commissioner's decision denying Hickman disability benefits is **AFFIRMED**.  Finally, it is

**ORDERED** that the matter is **DISMISSED** from the dockets of this Court.

**SIGNED** at Houston, Texas on this 29th day of September, 2009.

Calvin Botley
United States Magistrate Judge